**ATLANTIC CONSTRUCTION FABRICS, INC., Plaintiff–Appellee,**

and

**George E. Logue, Jr., Plaintiff,**

v.

**DANDY PRODUCTS, INC., Defendant–Appellant.**

No. 02–1451.

United States Court of Appeals, Federal Circuit.

April 23, 2003.

Before MAYER, Chief Judge, MICHEL, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

Dandy Products, Inc. ("Dandy") appeals the rulings of the United States District Court for the Eastern District of Virginia amending its judgment entered upon Atlantic Construction Fabric, Inc.'s ("ACF") Rule 68 offer of judgment, granting partial summary judgment of invalidity of claims 1 and 5 of U.S. Patent No. 5,632,888 ("the '888 patent"), granting judgment as a matter of law of noninfringement of claims 2 and 6 of the '888 patent, and awarding attorneys' fees to ACF under 35 U.S.C. § 285. Because the court did not err in any of its rulings, we *affirm.*

## BACKGROUND

Dandy is the assignee and owner of the '888 patent. The '888 patent is directed to a filter for removing particulate matter from water flowing into a curb inlet. Basically, the invention is to be placed in front of a curb storm drain such that it substantially covers the drain. Runoff water then must then pass through the filter to reach the drain. In that process, the invention filters out particulate matter from the runoff. Claim 1 is representative (disputed terms underlined):

1. An environmental filter system, comprising:

a curb inlet and an environmental *filter* in combination, said environmental *filter* including an elongated *porous material* for substantially covering a mouth of said curb inlet, said curb inlet in a plane having a vertical component, such that water will pass through said *porous material* while *sediment* and other solids will be substantially blocked from passing through said *porous material;* and

a *permeable body portion* enclosed within said *porous material,* said *permeable body portion* providing a degree of rigidity and form to said elongated *porous material* whereby debris is substantially prevented from entering said curb inlet.

'888 patent, col. 3, lines 22–27, col. 4, lines 1–9.

There were many disputed claims and the district court construed them in its *Markman* order. Only some of the court's constructions are relevant to this appeal: "Filter": a pervious article through which fluid is passed while sediment and other solids are substantially blocked; "Porous material": a material having small openings (or pores) that allow gasses and liquids to pass through while sediment and other solids are substantially blocked from passing through; "Permeable body portion": a body portion having openings to allow water to flow through the filter system; and "Sediment": dust, soil, silt, and other particulates of a type suspended in runoff waters.

Before the claim construction, ACF made an offer of judgment pursuant to Federal Rule of Civil Procedure 68. The offer of judgment, in relevant part, stated:

> Plaintiff ... offers to allow judgment to be taken against it with respect to Count One of the Counterclaim filed by Dandy Products, Inc. in the amount of Seven Thousand Five Hundred Dollars ($7,500) inclusive of the following.... ACF hereby offers to allow a Permanent Injunction Order to be entered against it enjoining it from infringing and from inducing or contributing to infringement by other of United States Patent No. 5,632,888 for the remaining term of such patent.

Before Dandy's counsel accepted the offer they called ACF's counsel to clarify the scope of the offer. Dandy subsequently accepted the offer and the court entered judgment for Dandy on all five ACF products. Shortly thereafter, ACF moved to amend the judgment under Federal Rule of Civil Procedure 60(b) because the order did not reflect the intent of the parties— namely, it failed to incorporate a "clarifica-

tion" of its scope that occurred in a telephonic conversation between counsel. The court amended its judgment pursuant to Rule 60(b) because the order as written, did not reflect the parties' "meeting of the minds."

The court granted summary judgment of anticipation of claim 1 and obviousness of claim 5 based upon a single reference: a filter system depicted in figure 13 of the International Erosion Control Association ("IECA") Training Manual dated April 1993. The sole issue in the anticipation analysis was whether the "filter" or "porous material" elements were met by the prior art system using multiple bags of gravel lined-up next to each other, rather than a unitary filter. The court found that the above elements were met because there is nothing in the patent that requires the "filter system referenced [in the patent] to consist of a unitary, elongated filter, as opposed to being composed of several discrete parts." Dependent claim 5 adds only the limitation that "said porous material is a geotextile material." The court found that claim was obvious, based on the above reasoning and the fact that "use of geotextile material as a porous material for filtering purposes was well known within the sediment and erosion control industry."

At the close of Dandy's counterclaim case, ACF moved for judgment as a matter of law of noninfringement of claims 2 and 6 of the '888 patent pursuant to Rule 50(a). The court granted that motion as to all three remaining products. The court granted the motion as to the Silt Sack and Ultra Drain Guard, because those products did not filter water and therefore lacked a "porous material" that filtered water. The court granted the motion as to the Gutterbuddy III, because that product also did not have "porous material" capable of fil-

tering "sediment" because its openings were 1/2 inch wide.

After trial, the court granted ACF's motion for all attorneys' fees ACF incurred in defending against Dandy's counterclaim. The court did so because it determined that: (1) Dandy should have known its case could not be successful because the "porous material" limitation could not be met in any of the products; (2) Dandy's evidence at trial was grossly insufficient (*i.e.*, it presented no evidence that the Silt Sack and Ultra Guard filtered water, how any of the products actually worked, produced no technically qualified expert); (3) Dandy did not adequately investigate the case (did not test any of the accused products relying only on descriptions of how they worked from brochures); and (4) it engaged in vexatious litigation conduct.

On appeal, Dandy challenges several of the court's rulings. Dandy challenges the court's grant of ACF's motion to amend the court's judgment entered in accordance with ACF's offer of judgment. Dandy's primary argument is that the court erred in its claim construction. Dandy also challenges the court's application of its construction in granting partial summary judgment of invalidity and in granting JMOL of noninfringement. Lastly, Dandy challenges the court's award of attorneys' fees under § 285.

## DISCUSSION

### I

■ Dandy argues that the trial court erred in granting ACF's motion to amend the court's initial order and judgment issued pursuant to Dandy's acceptance of ACF's offer of judgment. Because the court had to amend its order to give effect to the mutual intent of the parties, we hold that the court properly granted ACF's motion to amend the judgment pursuant to Rule 60(b).

First, the court properly decided that ACF's subsequent, oral clarification of the offer was permissible. Although there is case law in other circuit courts stating that an offer of judgment is irrevocable, *e.g.*, *Webb v. Dick James*, 147 F.3d 617 (7th Cir.1998), there is no case holding that the offer cannot be clarified before it is accepted. In fact, there is a case holding that such a clarification is permissible. *Radecki v. Amoco Oil Co.*, 858 F.2d 397 (8th Cir.1988); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1240 (4th Cir.1989). Although the offer contained no truly ambiguous terms, there is an absence of information as to what products are covered by the offer. ACF's subsequent oral communication clarified that only two products were covered by the offer of judgment— the Gutterbuddy I and Gutterbuddy II— even though count one of Dandy's counterclaim included three other ACF products—the Gutterbuddy III, the Silt Sack, and the Ultra Guard. Thus, the court properly determined that the offer was modified by the subsequent, pre-acceptance communication.

■ Second, we conclude that the court correctly determined that Dandy accepted only the offer as modified. There is no dispute that the clarification was communicated before Dandy accepted the offer and that ACF stated that the offer only applied to the Gutterbuddy I and II products. Thus, the only offer that Dandy could have accepted was the modified offer. Therefore, we conclude that there was mutual assent between the parties on the offer of judgment as modified.

The trial court, then, did not abuse its discretion in granting ACF's motion to amend its judgment entered pursuant to the Rule 68 offer. The court had to do so

to conform its judgment to the offer as clarified and intended by the parties.

## II

■ Dandy also challenges several aspects of the trial court's claim construction. Because we conclude that the trial court committed no errors in construing the claims, we uphold the trial court's constructions.

Dandy first argues that the court erred in not requiring the terms "filter" and "porous material" to mean a single or unitary structure. Dandy asserts that the claims, specification, and the prosecution history all consistently use "an" or "a" or refer to "the filter." Such references are not enough to limit the claims to a unitary structure. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356, 55 USPQ2d 1835, 1839 (Fed.Cir.2000) ("[A]n indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.' "). Further, there is no language in the patent or prosecution history that disclaims multiple structures or expressly defines the filter as a single or unitary structure. *See, e.g., Teleflex, Inc. v. FICOSA N. Am. Corp.*, 299 F.3d 1313, 1327, 63 USPQ2d 1374, 1382 (Fed. Cir.2002). Dandy also argues that the purpose of the invention—providing an environmental filter system that is easy to install and maintain—would be frustrated were multiple pieces to be used. This is because, Dandy asserts, filling several gravel bags is time-consuming and each of the multiple bags is heavy to lift and install. Dandy does not, however, explain why multiple pieces would so completely frustrate the purpose of the invention as to take such products outside of the claim language. Indeed, it seems that multiple, smaller bags could have some maintenance advantages, such as ease of cleaning, and installation advantages, such as being adaptable to drains of multiple sizes. In sum, Dandy has not shown that non-unitary structures were disclaimed.

Dandy's next claim construction argument is that the court erred by interpreting the pores in the "porous material" to be of a certain size (1/2 inch). At the threshold, we disagree with the premise of Dandy's argument—the court's construction did not require a specific size of pore. The court construed "porous material" as being a material having small openings (or pores) that allow gasses and liquids to pass through while sediment and other solids are substantially blocked from passing through. "Sediment," in turn, was construed as dust, soil, silt, and other particulates of a type suspended in runoff waters. The court, then, merely applied its constructions of "porous material" and "sediment" to the accused product—and its outer layer containing 1/2 inch holes or pores—and determined that the "porous material" limitation was not met because 1/2 inch holes cannot block particulate matter.

Lastly, Dandy argues that the district court erred in not considering that the "permeable body portion" can also perform the function of filtering sediment. This argument clearly fails, as the claims state that it is the "porous material" that blocks the sediment, whereas the "permeable body portion" provides "a degree of rigidity and form to said elongated porous material." '888 patent, col. 4, lines 1–9.

In sum, because we reject Dandy's arguments discussed above and several other arguments it makes in its briefing regarding the proper process for claim construction, we hold that the trial court did not err in its claim constructions. In addition, because we uphold the court's claim constructions, we also affirm the court's grant of judgment as a matter of law of nonin-

fringement of claims 2 and 6 of the '888 patent, as Dandy's arguments on that point depended upon our adoption of its claim construction.

## III

Dandy also challenges the trial court's grant of partial summary judgment of anticipation of claim 1 of the '888 patent and obviousness of claim 5 of the '888 patent. Apart from its claim construction arguments disposed of above, Dandy argues the court erred "[b]ecause ACF did not present tests demonstrating how the several gravel burlap bags ... functioned to anticipate or render obvious Claims 1 and 5, it did not meet its burden of showing invalidity by clear and convincing evidence." The only basis Dandy recites for ACF's evidence being insufficient is that the court required this evidence from Dandy in proving its infringement case. Dandy's argument ignores the other evidence ACF presented, namely the expert declaration of Jerald Fifield (authenticating his drawings and photographs of the prior art system and describing how it operates based on his own use and teaching of the system). The failure to test the prior art product does not raise a genuine issue of material fact in light of this evidence. Therefore, we hold that the trial court properly granted partial summary judgment of invalidity of claims 1 and 5 of the '888 patent.

## IV

■ Dandy's final argument is that the court clearly erred in finding that this was an "exceptional" case and abused its discretion in awarding attorneys' fees to ACF. Dandy challenges each of the trial court's reasons for awarding attorneys' fees to ACF. First, it argues that it was not the court's construction of the term "porous material" that made its infringe-

ment case not well founded; rather, it was the court's modification of that construction to include a 1/2 inch size limitation. As discussed earlier, the court did not change its constructions; it merely applied them to the facts. Second, Dandy argues its proofs at trial were not legally insufficient because the court excluded its only testing evidence and because it reasonably relied on an ACF brochure stating that its products were "filters." But the court did not abuse its discretion when it excluded the testing evidence, as Dandy first revealed it had done any testing at trial while questioning a witness. This late disclosure violated the discovery requirements. Also, it was made clear at trial that the devices did not "filter," but rather blocked water. Third, Dandy argues that it went to trial on advice of counsel, that ACF's offer of judgment shows that its case had merit, and that the case law relied on by the district court did not compel it to award attorneys' fees. But Dandy never had a qualified technology expert give it an infringement opinion; nor did it have one testify at trial. In addition, the lack of testing or knowledge of the accused devices would make any advice of counsel suspect. In short, nothing Dandy argues demonstrates clear error in any of the court's subsidiary factual findings leading to its finding that this was an exceptional case; nor does Dandy demonstrate that the court abused its discretion in awarding attorneys' fees.

Dandy's fall-back position is that even if the court properly granted attorneys' fees, the court nonetheless erred in awarding *all* costs incurred by ACF in defending against the counterclaim because the court only found unreasonable Dandy's continued pursuit of its infringement case after the court's construction of the claims in its *Markman* order. Thus, Dandy argues, the court should only have awarded post-

*Markman* order costs. The court, however, found that "Dandy was aware both before and after the Court issued its Markman opinion that the Gutterbuddy and ACF curb adapter products could not infringe the claims of the '888 Patent." The court charged Dandy with pre-*Markman* order knowledge of the weakness of its case because Dandy had urged the construction the court adopted and because Dandy had argued in a prior case that "the wire mesh with 1/2 inch openings disclosed in a prior art reference did not anticipate the '888 patent because the wire mesh could not be porous material." In light of this reasoning, we cannot say the trial court abused its discretion in awarding ACF's attorneys' fees for its entire defense of Dandy's infringement counterclaim.

### CONCLUSION

In conclusion, because we hold the trial court did not err in making any of its rulings, we affirm.